Marcos GARZA and Wife, Estella Garza, Individually and as next friend of their Son, Marcos Garza, Jr., Appellants,

v.

Dr. Herman J. KEILLOR and Dr. Martin V. Atchison, Appellees.

No. 17695.

Court of Civil Appeals of Texas, Houston (1st Dist.).

June 4, 1981.

Rehearing Denied July 2, 1981.

**670** 

Joseph R. Preston, Mission, for appellants.

Gary Gurwitz, John Lewis, McAllen, for appellees.

Before COLEMAN, C. J., and SMITH and PEDEN, JJ.

SMITH, Justice.

This is a medical malpractice suit in which Marcos Garza and his wife, Estella Garza, on behalf of themselves and their son, Marcos Garza, Jr., appellants, brought suit for malpractice against Dr. Herman J. Keillor and Dr. Martin V. Atchison, appellees. The trial court granted an instructed verdict in favor of the appellees.

On May 13, 1975, Marcos Garza, Jr., age 12, fell from a tree and sustained a compound fracture of his right forearm. Marcos was taken to the hospital and admitted. Dr. Keillor operated on the arm, put it into a cast, and put Marcos on Keflin, an antibiotic, to prevent infection. Dr. Keillor saw Marcos on the morning of May 17th before leaving for the weekend, noted that there was an infected wound, changed the antibiotic from Keflin to Methicillin and Garamycin, but did not take cultures, sensitivities and gram stains. On May 18th Dr. Atchison took over for Dr. Keillor, cut a window in the cast and ordered a culture and sensitivity test. The next day, May 19th, he cut Marcos' palm to improve the circulation and removed the cast. Dr. Keillor returned on May 20th. The results of one of the tests taken on the 18th was returned on the 22nd and revealed that clostridia, commonly known as gangrene, was present in the wound. Continuing problems with the gangrene resulted in a series of operations to remove infected tissue, amputation of the little finger, amputation of the right arm below the elbow, and finally infected portions of the bone.

Appellants' contend the trial court erred in granting appellees' motion for instructed verdict because the evidence raised fact issues.

Dr. Keillor raises reply points contending that the trial court did not err in granting the instructed verdict in his favor, that there is no evidence of the standard of care applicable to orthopedic surgeons in Harlingen, Texas in 1975 or that he violated any standards applicable to such surgeons, and that there was no evidence that his actions were the proximate cause of the minor appellant's injuries and damages.

Dr. Atchison raises one reply point contending the granting of the instructed verdict was correct because plaintiff failed to introduce any legally sufficient evidence to raise an issue of fact regarding negligence on Atchison's part that was a proximate cause of any injuries sustained by the minor plaintiff.

Appellants presented evidence through their expert witness, Dr. Garza, that in his opinion Dr. Keillor changed antibiotics without taking appropriate cultures, sensitivities and gram stains, that Dr. Garza knew the standard of care for the diagnosis and treatment of infections in Harlingen in May of 1975, and that this standard was violated by the failure of Dr. Keillor to take these tests when changing antibiotics. Dr. Garza also testified that it is the universal practice to do a gram stain with a culture sensitivity and that Dr. Atchison failed to do a gram stain when he opened the cast. Dr. Garza further testified that clostridia would have been detected if the gram stain had been done and that this violation of the standard of care caused clostridial destruction of the arm, which was the cause of the amputation.

▮ In considering an appeal from a judgment granting an instructed verdict we must view all the evidence in a light most favorable to appellant. We must accept as

true all evidence supporting appellants' allegations, resolve all conflicts and inconsistencies in favor of the appellant, and draw all inferences favorable to the appellant. *Texas Employers Ins. Assn. v. Page*, 553 S.W.2d 98 (Tex.1977); *Guyn v. Corpus Christi Bank and Trust*, 589 S.W.2d 764 (Tex.Civ.App.—Corpus Christi 1979, no writ); *Eckols v. Sabine Bank*, 613 S.W.2d 762 (Tex.Civ.App.—Beaumont 1981, no writ). To preclude an instructed verdict, appellant need not have proven negligence or proximate cause, but, rather, need only have raised some issues of fact as to their existence. *Grantham v. Rusk County Auction Company*, 553 S.W.2d 645 (Tex.Civ. App.—Tyler 1977, no writ).

 Dr. Keillor's first reply point states the trial court did not err in granting the instructed verdict in his favor. We disagree. Dr. Garza testified there was a standard, what the standard was, the standard was violated and such violation caused the damage. We are aware that Dr. Garza's testimony was in some respects contradictory; however where a witness contradicts his own testimony, it is the province of the fact finder to resolve the conflicts or inconsistencies in the testimony. *Webb v. Jorns*, 488 S.W.2d 407 (Tex.1974). Dr. Keillor's first reply point is overruled.

Dr. Keillor contends in his second and third reply points that there is no evidence of the standard of care applicable to orthopedic surgeons in Harlingen in May of 1975 or that he violated any such standard. As a basis for this contention Dr. Keillor urges that Dr. Garza was not shown to be qualified to testify as a medical expert witness by training or experience, was not familiar with the practice of orthopedic surgery in Harlingen, Texas in May of 1975, and did not give testimony of a standard of care or violation of a standard.

 Dr. Garza testified that he graduated from the University of California at San Diego School of Medicine in 1975. He then attended The University of Texas Southwestern Medical School, where he received his post-graduate training in internal medicine and commenced the practice of medicine in 1978. He then served for a year as the Medical Director of Medical City Dallas Hospital, Dallas, Texas. He further testified that in his training and experience he had become familiar with the standard of care in determining what infection a person has, that the standard of care for the use of drugs in treating infections was the same throughout the United States and that the standard of care in the determination of what infection is had is standard throughout the United States. The fact that Dr. Garza lived in Dallas and the incident in question occurred in Harlingen does not preclude his testimony concerning the medical standards of practice and treatment in Harlingen, provided sufficient familiarity with such standards is shown. *Christian v. Jeter*, 445 S.W.2d 51 (Tex.Civ.App.—Waco 1969, writ ref'd n. r. e.); nor does the fact that Dr. Garza is an internist and the defendants orthopedic surgeons prevent Dr. Garza from testifying about the standard of care in the infection process where the standard of care is common to and equal in all fields of medical practice. *Porter v. Puryear*, 153 Tex. 82, 262 S.W.2d 933 (1953). We are of the opinion that the trial court did not abuse its discretion in permitting Dr. Garza to testify as a medical expert. We are of the further opinion that Dr. Garza's testimony established a prima facie case of negligence against Dr. Keillor. Dr. Keillor's second and third reply points are overruled.

Dr. Keillor in his last reply point asserts that there is no evidence that any of his actions were the proximate cause of Marcos' disability. We disagree. Dr. Garza testified that the arm would have been saved if the proper medical procedures had been followed.

 In medical malpractice cases, the medical expert can testify as to his opinion regarding the cause which produced or probably produced a certain physical condition that exists or has existed. The plaintiff must show at least a reasonable probability that the plaintiff's complications were caused by the doctor's negligence. *Gibson v. Avery, MD*, 463 S.W.2d 277 (Tex.Civ.App.

672

—Fort Worth 1970, writ ref'd n. r. e.). A medical expert may draw conclusions as to proximate cause and the only limits are that the expert bases his opinion on reasonable medical probability as opposed to possibility. *Lee Boone v. United Founders Life Insurance Company,* 565 S.W.2d 380 (Tex. Civ.App.—Fort Worth 1978, writ ref'd n. r. e.). Dr. Keillor's fourth reply point is overruled.

Dr. Atchison alleges by his only reply point that the trial court was correct in granting him an instructed verdict. He asserts appellants failed to introduce any legally sufficient evidence to raise an issue of fact regarding any negligence on his part that was a proximate cause of any injury sustained by plaintiff.

Dr. Garza testified that Dr. Atchison violated the standard of care by not taking a gram stain on the 18th of May when he opened the window and took the culture sensitivity. He further testified it is universal to do a gram stain with a culture sensitivity and that the clostridia bacteria which were detected by the test results of the 22nd of May could have shown on the 18th if the gram stain had been done. It was not too late to save the limb until the 18th. We are of the opinion that there is sufficient evidence to preclude an instructed verdict. Dr. Atchison's reply point is overruled.

The appellants' point of error is sustained, the appellees' reply points are overruled, and it is ordered that the judgment of the trial court be reversed and the case remanded for trial on the merits.